ROGERS, J.
 

 The plaintiff is a corporation engaged in the manufacture and sale of staves, owning a mill and a millyard near the city of Alexandria. The line of the defendant railroad company crosses the Red river near Alexandria and near the plant of the plaintiff. During the unprecedented floods of the year 1927, the Red river overflowed its banks, and the flood waters covered plaintiff’s millyard, on which was stacked a great' quantity of staves. In order to prevent these staves .from drifting away, plaintiff constructed a floating boom, which plaintiff in this suit alleged was cut by defendant’s employees, allowing its staves to escape into Bayou Rapides and Red river. Plaintiff averred that there Were 963,130 staves stacked on its yard, of which 570,436 were salvaged at a cost of -$5,133.91.- Plaintiff sued for this amount and for - $19,707.18 additional as the value of the' 392,694 staves which it alleged were lost by the acts of defendant’s employees.
 

 The defendant railroad company denied generally the allegations of plaintiff’s petition ;■ denied that its employees cut the floating boom; averred that any. loss suffered by plaintiff was due to the negligent manner in which it undertook to protect its property; alleged that the' flood conditions constituted vis major for which défendant • could not be held responsible ; and further set forth that if any act of its employees was responsible for the floating away of plaintiff’s staves, the act was done, in good faith for the purpose of protecting defendant’s property in an emergency resulting from vis major, and was an error of judgment, and not negligence. - ■ ■
 

 After a lengthy trial, during the course of which a mass of testimony was submitted by the parties, the court below rendered judgment in favor of defendant, dismissing plaintiff’s suit. Érom this judgment plaintiff has appealed.
 

 
 *1080
 
 The judge of the district court in rendering the judgment assigned his reasons orally. It appears to be conceded, however, in the briefs filed by the 'parties in this court, that the judge declared in the course of his remarks that it was not necessary to decide whether defendant’s employees were negligent to the extent of imposing liability on defendant for plaintiff’s loss, because, even if they were, plaintiff had not proved its damages with sufficient certainty to form the basis for any recovery.
 

 Plaintiff asserts that it produced the best evidence that it was capable of producing under the nature of the case, and that this evidence disclosed the manner in which its damages could be measured. Plaintiff argues that the case falls within the rule that it is the uncertainty as to their nature and not as to their measure and extent which precludes the recovery of uncertain damages. Hence plaintiff contends the judge of the district court erred in not using his discretion in fixing the quantum of damages due it by the defendant railroad company.
 

 During the trial of the case, plaintiff’s counsel, apparently realizing that the evidence relating thereto was too vague and indefinite to authorize any recovery, entered a remittitur to plaintiff’s demand for $5,133.91 for the expense incurred in salvaging staves, leaving plaintiff’s ultimate demand at §19,-707.18, the value of the staves alleged to have been totally lost.
 

 The case turns exclusively upon questions of fact, and the judgment of the court below is fully sustained by the evidence — or, rather, lack of evidence. We do not find in the record any more definiteness or certainty in the evidence relative to the main demand than counsel- for the plaintiff apparently found in the evidence adduced in support of plaintiff’s demand for the expense incurred for the salvaged staves, causing plaintiff -to voluntarily abandon that particular item of its claim. And our finding of fact applies to the measure and extent as well as to the nature of plaintiff’s loss.
 

 It Is a matter of common knowledge that the floods of -the Lower Mississippi Valley In the year 1927 constituted the greatest disaster of its kind ever experienced by that section of the country. The inhabitants of -the flooded areas, drawn together by their common misfortunes, rendered every assistance to one another that was in their power to render. The defendant company was particularly active in the relief of the people along its line of railroad, extending to them every facility which it possessed for that purpose. Prior to the flooding of plaintiff’s plant, the defendant offered plaintiff the flat cars necessary to remove its staves to a safe place, but the offer was refused, because plaintiff’s representatives thought that they would be able to protect their staves in any emergency by holding them in place by means of weights placed on the tops of the stacks.
 

 The immediate cause of the flooding of plaintiff’s property was the breaking of the flood ’ gates of the Bayou Rapides levee. When that levee gave way, the flood waters rushed over plaintiff’s millyard and over the adjacent tracks of the defendant railroad company. The average depth attáined by the water -on reaching its level was approximately ten feet on the millyard and from two to three feet on defendant’s railroad track. Four or five days after the water had covered plaintiff’s property, plaintiff constructed a floating boom for the purpose of preventing its staves from floating away. This boom was composed of various kinds of material— bridge timbers, telegraph poles, saw logs,
 
 *1082
 
 planks, small timbers, and, in fact, any material that plaintiff was able to hastily procure in the emergency. The heterogeneous materials composing the boom were placed end to end and held together by a wire extending its entire length and fastened to the different pieces by wire staples. The boom was tied to telegraph poles, trees, and other stationary objects in order to hold it in place.
 

 The testimony in the record leaves no room for doubt that, prior to the construction of the floating boom, great quantities of plaintiff’s staves were washed away by the onrush of the flood waters and scattered generally all over the territory. The testimony also leaves no room for doubt that the boom itself was wholly inadequate for the purpose for which it was constructed. There were a number of gaps in the structure, and by the action of the elements it was broken in many places. A large number of staves escaped through these gaps and breaks. Many stacks of staves floated away and were driven by the high winds and strong currents over and under the boom. When the level of the water decreased, numbers of staves passed under the boom, which, because it was attached to telegraph poles, trees, and other objects, remained stationary and at some distance above the water surface.
 

 The staves' washed out of plaintiff's mill-yard accumulated to such an extent on the tracks of the defendant railroad company as to derail a train on one occasion. The escaped staves hung up in trees, became entangled with water lilies, accumulated in eddies, and were distributed over a wide range of territory. Many of the inhabitants of the territory used these staves for firewood the following winter.
 

 The boom as constructed inclosed a greater area than the limit of plaintiff’s property. Before its construction, the boatman engaged in the daily transportation of the bridge gang of the defendant company
 
 iz
 
 and from the railroad bridge across Red river made use of a certain route which was later obstructed by the boom.
 

 There is some controversy between the parties as to the necessity for defendant’s employees using this route. The testimony on the point, we think, preponderates in favor of defendant’s contention that the route, because of the high winds and waves, was the only one which could be used with safety by its employees in going to and returning from their work.
 

 On the morning of May 9, 1927, plaintiff completed the construction of its boom across the route used by defendant’s employees, but these employees were allowed to go through the obstruction by the assistant manager of the plaintiff company. On the afternoon of the same day, defendant’s boatman cut the boom in order that the boat containing defendant’s employees might pass through it. The boom had been repaired by the next morning, May 10, 1927, when it was again cut by defendant’s boatman. When defendant's employees returned that afternoon from their work at the bridge across Red river, the boom was again closed. One of defendant’s employees unfastened the wire holding the pieces composing the boom, and defendant’s boat again went through it. At this time, however, some of defendant’s employees, assisted by some of the plaintiff’s employees, refastened the wire which held the structure together. From this it will be seen that the boom was left open due to the acts of defendant’s employees for the short periods from the afternoon of May 9th to the morning of May 10th, and from the morning to the afternoon of May 10th. The testimony also shows that at the time the boom
 
 *1084
 
 was cut by defendant’s employees there were few,, if 'any • staves, floating against or in the vicinity of the boom.
 

 Apart, therefore, from, the question of the right of defendant’s employees to cut plaintiff’s boom as being an obstruction to their free movements to and from the scene of their daily labors', • thé testimony irresistably compels us to the conclusion that only a few of the great'mass of staves that were washed out of plaintiff’s millyard by the flood waters frcim: the'river went through the openings made in "tbe boom by defendant’s employees. The number and the value of thése staves are negligible in .comparison with the total number-and value of the-staves lost by plaintiff, and-afford-np substantial basis for the exercise-. by the .court of -its sound discretion in awarding- plaintiff any damages whatever against the defendant railroad company. In view of this result,-we do not find it necessary to discuss the question raised by defendant relative to -the vagueness of plaintiff’s proof- as to -the total number of staves Which it lost and as to the uncertainty -of the method used in fixing the amount of the .damages claimed therefor. • ■
 

 For the reasons'assigned, the judgment appealed from is affirmed; at the cost of the ap; pellant.